RECEIVED
USDC, CLERK CHARLESTON, SC
2010 SEP 14 P 3: 43

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Tamara Hill, | ) | C. A. No. 2:09-1912-RMG-RSC |
| Plaintiff, | ) | |
| -versus | ) | **REPORT AND RECOMMENDATION** |
| Berkeley Family Practice, LLC, | ) | |
| Defendants. | ) | |

This pregnancy discrimination case is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motion for summary judgment filed on April 21, 2010. 28 U.S.C. § 636(b).

The plaintiff, Tamara Hill, sued her former employer, Berkeley Family Practice, LLC, on July 20, 2010, and alleged she had been discriminated against because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, and the Pregnancy Discrimination Act of 1978, 42 U.S.C. §§ 2000e(k).

The plaintiff filed an opposition to the summary judgment motion on May 11, 2010, and oral argument on the motion was had before the undersigned on June 8, 2010. Hence it appears consideration of the motion is appropriate.

### SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ. 56(c). The judge is not to weigh the evidence,

but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. V. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. V. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. Ash. V. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into

the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

## **APPLICABLE EMPLOYMENT DISCRIMINATION LAW**

Plaintiff alleged that she was wrongfully terminated because of her pregnancy in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

In 1978, Congress passed the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). This Act made it clear that Title VII encompassed pregnancy-based discrimination. A pregnancy discrimination claim is analyzed in the same fashion as any other sex discrimination claim brought pursuant to Title VII. DeJarnett v. Carning, Inc., 133 F.3d 293, 297 (4th Cir. 1998).

Under the burden-shifting framework a prima facie case of pregnancy discrimination may be established by the plaintiff by showing,

> (1) she is pregnant (or has indicated an intention to become pregnant), (2) her job performance has been satisfactory, but (3) the employer nonetheless dismissed her from her position (or took some other adverse employment action against her) while (4) continuing to have her duties performed by a comparably qualified person... Establishing the prima facie case raises a

3

> rebuttable presumption that discrimination sparked
> the adverse employment action, ..., and imposes
> upon the employer a burden to put forward a
> legitimate, nondiscriminatory motive for the
> action... If the defendant clears this modest
> hurdle, the presumption of discrimination
> vaporizes, ... and the plaintiff (who retains the
> ultimate burden of persuasion on the issue of
> discriminatory motive throughout) must then prove
> that the employer's proffered justification is a
> pretext for discrimination.

Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996). Thus, once the employer has put forth a legitimate nondiscriminatory motive for its actions, the burden shifts back to the plaintiff to show that the articulated motive was false and the true reason was illegal discrimination based on pregnancy.

In Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's prima facie case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *disbelieve* the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination." Id. at 147 (quoting St. Mary's Honor Ctr., 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude

4

that the employer unlawfully discriminated." Id. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. See, Id. at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair-but nondiscriminatory-employment decisions. Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. Shepard v. Geo. W. Park Seed Co., 2008 WL 4065775 (D.S.C. 2008) (quoting Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1995).

In Proud v. Stone, 943 F.2d 796, 797 (4th Cir. 1991), the United States Court of Appeals held that a defendant's knowledge of the plaintiff's circumstances at the time of hiring creates an inference that the defendant's reasons for adverse employment action are not pretextual. "From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes... only to fire them once they are on the job." Id. at 797.

Likewise, in DeJarnette v. Corning Inc., 133 F.3d 293 (4th Cir. 1998), an employee claimed that her employer terminated her during her probationary period because of her pregnancy. DeJarnette's employer hired her while she was pregnant and knew that she was pregnant when she was employed. To prove

5

discrimination, DeJarnette relied on Cornings's knowledge of her pregnancy when she was hired, and her contention that Corning's articulated nondiscriminatory reasons for her discharge were false. The court found that rather than suggesting discrimination, Corning's knowledge of DeJarnette's pregnancy when it employed her created an inference that Corning's reasons for discharging DeJarnette were not pretextual.

Furthermore, DeJarnette failed to offer evidence that Corning's reasons for discharging her were false. The court held that to establish that an employer's "proffered justification is pretext for discrimination, the plaintiff must prove both that the reason is false, and that discrimination was the actual reason for the challenged conduct." Id. at 298-99.

The court in DeJarnette also stated that opinions of the plaintiff were not valid in showing pretext as "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. at 299 (quoting Evans v. Technologies Applications & Serv. Co., 80 F. 3d 954, 960-61 (4th Cir. 1996) and Smith v. Flax, 618 F.2d 1062 (4th Cir. 1980)).

## **FACTS**

The facts, either undisputed or as presented by the plaintiff as the non-moving party on summary judgment, with all reasonable inferences drawn in favor of the plaintiff, to the extent supported by the record, are as follow.

In December of 2007, Plaintiff responded to an advertisement for a full time Certified Medical Assistant ("CMA") position at Berkeley Family Practice ("BFP"). (Santiago Deposition Page 47, Lines 22-25; Page 48, Lines 1-10). Subsequently, Plaintiff interviewed with Jamie Wilson-Thompson, the nursing supervisor with BFP, and Plaintiff informed Thompson that she was 28 weeks pregnant and would need to take maternity leave in the near future. Dr. Santi of BFP also interviewed Plaintiff. (Plaintiff Deposition Page 18, Lines 13-16). Neither interviewers asked questions that Plaintiff considered to be inappropriate. (Plaintiff Deposition Page 18, Lines 19-21). Approximately two hours after the interview, Dr. Santi telephoned Plaintiff and offered her the position which she accepted. (Plaintiff Deposition Page 19, Lines 1-9). Plaintiff started the job at BFP on December 11th. (Plaintiff Deposition Page 20, Lines 12-18).

At the time Plaintiff was hired, BFP had a total of ten CMA positions; seven CMAs were assigned to the seven medical providers, two CMAs were assigned to perform special procedures, and one CMA was assigned as a floater to fill in where needed. (Santiago Deposition Pages 19-20).

Prior to Plaintiff being hired, BFP had one employee in the special procedure unit, Ms. Hammer. (Santiago Deposition Page 39, Lines 14-19). Plaintiff replaced Ms. Hammer, who resigned her position. (Santiago Deposition Page 39, Lines 10-25; Page 40,

Lines 1-9); Page 45, Lines 21-25). Around the same time that Plaintiff was hired, BFP hired a second CMA, Ms. Unsworth, to work in the special procedures unit. (Santiago Deposition Page 45, Lines 14-20). However, Ms. Unsworth did not start work until mid-January 2008 because she requested and was allowed to return to her home in Colombia, South America, for the holidays prior to beginning work in January 2008. (Santiago Deposition Page 45, Lines 5-13).

Plaintiff was assigned to work in the area of Special Procedures which included performing axial brachial indices (ABI's) and DEXA bone density scans. (Plaintiff Deposition Page 21, Lines 5-14). BFP trained Plaintiff on these machines. (Plaintiff Deposition Page 21, Lines 15-19). Additionally, Plaintiff served as a floater for other CMAs when they were absent. (Plaintiff Deposition Page 21, Lines 7-9). There were "a lot" of CMAs working at BFP, all of whom were female. (Plaintiff Deposition Page 22, Lines 3-6). The only males who worked at BFP were the doctors. (Plaintiff Deposition Page 22, Lines 9-16).

Initially, Plaintiff had no problem completing her work. (Plaintiff Deposition Page 24, Lines 1-2). However, as her pregnancy progressed, she experienced "normal pregnancy problems" which included, but were not limited to, back pain, swelling, and discomfort (Plaintiff Deposition Page 24, Lines 3-9). Plaintiff did not have problems getting along with other employees or the

doctors, except for a few nurses who "maybe didn't understand" her, because she was a jokester. (Plaintiff Deposition Pages 24-25).

Plaintiff was frequently sick and missed "an adequate amount" of work. (Plaintiff Deposition Page 26, Lines 15-25).. Plaintiff experienced the flu, double ear infections, possible pneumonia, viral infections, and severe urinary tract infections. (Plaintiff Deposition Page 27, Lines 1-4). Plaintiff deposed that she "stayed sick throughout [her] whole pregnancy." (Plaintiff Deposition Page 27, Lines 6-7). While at work, Plaintiff complained about being pregnant, but never complained that she could not do her job because of her pregnancy. (Plaintiff Deposition Page 27, Lines 17-21).

In February 2008, BFP began interviewing to work as a floater position, because they needed another CMA to perform all of the work. (Santiago Deposition Page 20, Lines 10-14). Shortly after Plaintiff went out on maternity leave, BFP hired Dabney Singletary to be the floater. (Plaintiff Deposition Page 38, Lines 10-14). While Plaintiff was on leave, BFP determined that Unsworth was taking care of the practice's needs for a CMA to perform special procedures, meaning there was not a need for a second CMA in special procedures. (Defendant's Motion Page 5). Additionally, Santiago and the BFP partners discussed Plaintiff's high rate of absenteeism, as well as the complaints received by

BFP that Plaintiff had a negative demeanor in the office and around patients. (Defendant's Motion Page 5).

The lack of work was reflected in the number of tests conducted in the Special Procedure Unit. (Santi Deposition Page 17, Lines 1-10), and recorded by BFP in a log of procedures done by the Special Procedures Unit. (Santiago Deposition Page 52, Lines 11-23). The log shows that the number of tests increased during the time leading up to Plaintiff's maternity leave in March of 2008. (Santiago Deposition, Exhibit 1). However, the number of procedures performed is not the only way to measure available work. (Santiago Deposition Page 43).

On March 5, 2008, Plaintiff called BFP advising that she had a severe migraine headache and she would not be reporting to work that day. (Plaintiff Deposition Page 30, Line5; Lines 16-20). Later that afternoon, Janet Santiago, Practice Manager for BFP, telephoned Plaintiff and told her that she and the doctors thought it was best if Plaintiff went out on maternity leave because of her difficult pregnancy. (Plaintiff Deposition Page 31, Lines 6-16). Plaintiff did not argue with Santiago. (Plaintiff Deposition Page 31, Lines 14-16). Santiago told Plaintiff to let her know when she was ready to come back, or to call after the baby was born, and to keep them informed. (Plaintiff Deposition Page 31, Lines 17-21).

On March 26, 2008, Plaintiff's baby was born. (Plaintiff

Deposition Page 31, Lines 21-23). On March 29, 2008, Plaintiff went to the BFP office with the baby to see Dr. Ackerman because the baby had high bilirubin. (Plaintiff Deposition Page 32, Lines 10-13). Plaintiff went several times to the BFP offices. (Plaintiff Deposition Page 32, Lines 19-20). During these visits, Plaintiff spoke with Santiago several times. (Plaintiff Deposition Page 32, Lines 21-23). At first, Plaintiff spoke to Santiago about the baby generally and later begin to inquire about when she would be able to return to work. (Plaintiff Deposition Page 32, Line 24; Page 33, Lines 1-4). Plaintiff told Santiago she would be available for work in May. (Plaintiff Deposition Page 33, Line 4).

Plaintiff was released for work in May of 2008. (Plaintiff Deposition Page 33, Lines 16-18). Plaintiff telephoned Santiago and left her a message that she was ready to return to work. (Plaintiff Deposition Page 33, Lines 20-21). Plaintiff also visited Santiago and told her that she was ready to return to work. (Plaintiff Deposition Page 33, Lines 20-21). Santiago informed Plaintiff that she would have to speak with the doctors and get back with her. (Plaintiff Deposition Page 33, Lines 22-23). A week passed and Santiago had not contacted the Plaintiff. (Plaintiff Deposition, Page 34, Line 9). Subsequently, Plaintiff telephoned Santiago and Santiago informed her that BFP was not going to rehire her because BFP did not have a need for

another CMA. (Plaintiff Deposition Page 34, Lines 11-13; Lines 15-22). Plaintiff cursed Santiago on the phone. (Plaintiff Deposition Page 35, Lines 1-4).

Plaintiff admits that she was not discriminated against because of her sex while working at BFP. (Plaintiff Deposition Page 40, Lines 20-25; Page 41, Lines 1-4). Also Plaintiff has no evidence that BFP had a job opening for a CMA in May when she was ready to return to work. (Plaintiff's Deposition Page 43, Lines 23-25; Page 44 Lines 1-4).

BFP's employee manual provides that new employees are on a probationary status for the first six months of employment. (Plaintiff Deposition Page 3, Lines 7-11). Plaintiff was not told of her probationary status and does not recall getting an employee manual. (Plaintiff Deposition Page 20, Line 7-11).

## **DISCUSSION**

A review of the record and relevant case law indicates that the defendant's motion for summary judgment should be granted.

The defendant seeks judgment as a matter of law on the plaintiff's pregnancy discrimination claim because it has stated a legitimate, nondiscriminatory reason for its actions, and the Plaintiff has no proof that this reason is pretext for illegal pregnancy discrimination. It appears that the defendant is correct.

Here, the defendant conceded for summary judgment purposes that Plaintiff demonstrated a prima facie case of pregnancy discrimination. Therefore, the remaining question is whether Plaintiff has shown, under the burden-shifting framework, that BFP's stated reason for not rehiring the Plaintiff is false and that illegal pregnancy discrimination was the real reason she was not given a CMA position when her physician released her to return to work in May 2008. DeJarnette v. Corning Inc., 133 F.3d 293 (4th Cir. 1998).

Like DeJarnette, the Plaintiff has failed to show a reasonable probability that BFP's reasons for discharging her were pretextual. Plaintiff has put forth little evidence that BFP's stated motive was false or that their real reason was discriminatory. The amount of procedures performed after Hill left did increase, but as Ms. Santiago stated in her deposition, the amount of procedures performed is not the only measure of available work. However, even if the defendant's motive is false, there is no proof that pregnancy discrimination was the actual reason for Plaintiff's dismissal. Both elements must be proven in order for the plaintiff to satisfy her burden. Id.

Like the Proud and DeJarnette defendants, BFP hired the Plaintiff when she was already 26 weeks pregnant, which infers that BFP's reasons for discharging Hill were not because of her pregnancy. The BFP partners were aware of Hill's pregnancy when

she was hired, and the same partners authorized the Plaintiff's firing.

In this case, BFP believed that it was not in need of Plaintiff's services and "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. at 299 (quoting Evans v. Technologies Applications & Serv. Co., 80 F. 3d 954, 960-61 (4th Cir. 1996) and Smith v. Flax, 618 F. 2d 1062 (4th Cir. 1980)). Plaintiff's belief that BFP fired her because of her pregnancy is not evidence and, thus, is insufficient to defeat this well-supported summary judgment motion.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment should be granted.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
September 14, 2010